# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00801-CV

**The University of Texas System and The University of Texas at Dallas, Appellants**

**v.**

**Ken Paxton, Attorney General of Texas; and Marilyn Cameron, Appellees**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
NO. D-1-GV-11-001923, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Appellants, the University of Texas System and the University of Texas at Dallas (collectively, "the University") appeal from the trial court's grant of the Attorney General's summary-judgment motion in a case involving the Texas Public Information Act (PIA). *See generally* Tex. Gov't Code §§ 552.001-.353. The trial court's judgment ordered that the University must disclose the information at issue—the identities of certain persons who agreed to participate as human research subjects in social-science experiments relating to national-security issues. Because we conclude that the Attorney General did not conclusively negate any element of the University's claim that the information is protected by the common-law right to privacy, we will reverse the trial court's grant of summary judgment and remand the case for further proceedings.

**BACKGROUND**

The University received a public-information request from appellee Marilyn Cameron seeking several categories of information related to three separate social-science research studies being conducted by a tenured faculty member. The University provided documents that were responsive to some portions of her request, determined that it had nothing responsive to other portions of her request, and deemed certain information to be confidential by law. As required by the PIA, the University requested a letter ruling from the Attorney General on the information that it deemed to be confidential by law; that information was a list of names of participants in one of the social-science research studies.[1] *See id.* § 552.301 (requiring governmental body that receives request for information that it seeks to withhold under statutory exception to request decision from attorney general about whether information falls within that exception). The University asserted that the identities of the human research subjects who participated in the study are protected from disclosure by PIA Section 552.101, which excepts information from disclosure if it is "considered to be confidential by law, either constitutional, statutory, or by judicial decision." *Id.* § 552.101.

The University contended that the common-law and constitutional right to privacy protects the information at issue. The University explained that the individuals' identities neither had been nor would be released as part of any published articles relating to the research at issue. In addition, the individuals had received informed-consent statements indicating that their participation would be kept confidential. The University argued that in *Ramie v. City of Hedwig Village, Texas*,

---

[1] According to the University, only one of the three research studies has a list of names associated with it.

2

the Fifth Circuit Court of Appeals recognized that the constitutional right of privacy may protect intimate personal matters outside the traditional "zones of privacy," unless a legitimate state interest outweighs the threat to the individual's privacy and that the privacy interest "includes the right to be free from the government disclosing private facts about its citizens." *See* 765 F.2d 490, 492 (5th Cir. 1985). The University also argued that an individual's agreement to participate as a human research subject is a personal matter and that disclosure of the information would be highly offensive to a reasonable person; i.e., disclosure of an individual's participation in the study would constitute a violation of the common-law tort of invasion of privacy.

The Attorney General issued a letter ruling rejecting those arguments and concluding that the University did not demonstrate that the requested information is protected under the common-law or constitutional right to privacy. *See* Tex. Att'y Gen. OR2011-17401. The University filed suit against the Attorney General, challenging the letter ruling and seeking a declaration that the requested information is protected by PIA Section 552.101, the common-law and constitutional rights to privacy, and 45 C.F.R. Part 690. *See* Tex. Gov't Code § 552.324 (authorizing suit by governmental body seeking declaratory relief from compliance with Attorney General decision that information must be disclosed). Marilyn Cameron, the requestor, acting pro se, intervened in the suit. *See id.* § 552.325(a) (allowing requestor of public information to intervene in suit seeking to withhold information).

The University and the Attorney General filed cross-motions for summary judgment. The trial court denied the University's summary-judgment motion and granted the Attorney General's summary-judgment motion. The University appeals only the grant of the Attorney

3

General's motion and seeks a remand of the case to allow it to prove at trial that the information qualifies as confidential.

**The PIA**

The PIA's purpose is to provide public access to complete information about government affairs and the official acts of public officials and employees. Tex. Gov't Code § 552.001(a); *Jackson v. State Office of Admin. Hearings*, 351 S.W.3d 290, 293 (Tex. 2011). In support of this purpose, the PIA directs that it be liberally construed in favor of disclosure of requested information. *See* Tex. Gov't Code § 552.001(b); *Jackson*, 351 S.W.3d at 293. When public information is requested from a governmental entity, it must be promptly produced for inspection, duplication, or both, unless the PIA specifically excepts it from disclosure. *See* Tex. Gov't Code §§ 552.221 (requiring prompt production of public information), .101-.156 (establishing specific exceptions). If no previous determination has been made about the requested information, and the governmental entity contends that a PIA exception applies, the governmental entity must seek a decision from the attorney general about whether the exception applies to the requested information. *See id.* § 552.301. If the attorney general determines that the requested information must be disclosed to the requestor, the governmental entity may seek declaratory relief from compliance with the decision. *See id.* § 552.324.

The governmental entity has the burden of proving in a judicial proceeding that an exception to disclosure applies. *Texas Dep't of Pub. Safety v. Abbott*, 310 S.W.3d 670, 673-74 (Tex. App.—Austin 2010, no pet.). Exceptions to the PIA should be construed narrowly. *See Arlington Indep. Sch. Dist. v. Texas Att'y Gen.*, 37 S.W.3d 152, 157-58 (Tex. App.—Austin 2001, no pet.)

4

(citing *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 364 (Tex. 2000)). Under PIA Section 552.101, information is excepted from disclosure "if it is information considered to be confidential by law, either constitutional, statutory, or by judicial decision." Tex. Gov't Code § 552.101. In this case, the University asserts that the requested information is "confidential by law," based on the common-law and constitutional right to privacy. *See generally Industrial Found. of the S. v. Texas Indus. Accident Bd.*, 540 S.W.2d 668 (Tex. 1976).

## ANALYSIS

In one issue on appeal, the University asserts that the trial court erred by granting the Attorney General's traditional summary-judgment motion when no evidence was attached to the motion and the motion did not address specific factual issues that precluded the Attorney General from conclusively negating the University's right to relief. The University acknowledges that many PIA cases involve issues that are pure questions of law, but it contends that in this case the application of the exception for information protected by the common-law right to privacy centers on fact-specific questions. The Attorney General responds that he met his burden as summary-judgment movant "by showing that the University has failed to prove an element of its claim."

### Standard of review

We review the trial court's summary judgment de novo, taking as true all evidence favorable to the nonmovant and indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Summary judgment is proper when the evidence shows that there are no disputed issues of material fact and

5

the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). A movant, like the Attorney General, who seeks traditional summary judgment against another party's claim, must conclusively negate at least one element of that claim or conclusively establish each element of an affirmative defense. *See Shah v. Moss*, 67 S.W.3d 836, 842 (Tex. 2001); *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). If the movant meets this burden, the burden shifts to the nonmovant to raise a genuine issue of material fact on the negated element or affirmative defense to preclude summary judgment. *Centeq Realty*, 899 S.W.2d at 197. "But if the movant does not satisfy its initial burden, *the burden does not shift* and the non-movant need not respond or present any evidence." *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014) (emphasis added).

When both sides move for summary judgment, each party must carry its own burden, and neither party can prevail because of the other's failure to discharge its burden. *Id.* at 511-12; *City of Garland*, 22 S.W.3d at 356. When the trial court grants one motion and denies the other, we consider both sides' summary-judgment evidence. *Valence Operating Co.*, 164 S.W.3d at 661. If we determine that the trial court erred as a matter of law, we render the judgment that the trial court should have rendered. *Id.* If we determine that a fact issue precludes summary judgment for either party, we remand the claim for trial. *See University of Tex. Health Sci. Ctr. at Hous. v. Big Train Carpet of El Campo, Inc.*, 739 S.W.2d 792, 792 (Tex. 1987) (per curiam).

**Common-law privacy right**

In *Industrial Foundation of the South v. Texas Industrial Accident Board*, a 1976 plurality opinion, the Texas Supreme Court set forth the test for information that is deemed

6

confidential by law because it is protected by the common-law right to privacy. *See* 540 S.W.2d at 682-85. The supreme court determined that if a disclosure by a governmental body would give rise to a tort action for invasion of the right of privacy, then the requested information is protected by judicial decision. *Id.* at 682-83; *see also* Tex. Gov't Code § 552.101 (establishing that information is excepted from disclosure "if it is information considered to be confidential by law, either constitutional, statutory, or by judicial decision"). Although several privacy interests are protected under the common law, the parties agree that the interest at issue here is an individual's right to avoid "[p]ublic disclosure of embarrassing private facts." *See Industrial Found.*, 540 S.W.2d at 682.

There are three elements of a tort action for public disclosure of embarrassing private facts: (1) publicity was given to matters concerning an individual's personal life, (2) the publication of which would be highly offensive to a reasonable person of ordinary sensibilities, and (3) the matter publicized is not of legitimate public concern. *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473-74 (Tex. 1995) (citing *Industrial Found.*, 540 S.W.2d at 682). In his traditional summary-judgment motion, the Attorney General contended that, as a matter of law, "a list of names of human research subjects does not meet the test for information protected under common-law privacy," arguing that when compared with the type of information protected in *Industrial Foundation*, "the names of human research subjects are not highly intimate or embarrassing private information." The only exhibit on which he relied in the motion was his own letter ruling determining that the information was not protected from disclosure by the common-law right to privacy. He asserted that determining whether the information is subject to the PIA and whether an exception to disclosure applies are matters of statutory construction and pure questions of law that

7

are appropriate for resolution by summary judgment, relying on two Texas Supreme Court PIA opinions. *See, e.g.*, *City of Garland*, 22 S.W.3d at 358-64 (analyzing statutory language to determine whether draft document circulated to city council is public information and whether deliberative-process privilege is incorporated in agency-memoranda exception and if it applied to requested information); *A & T Consultants, Inc. v. Sharp*, 904 S.W.2d 668, 674-76 (Tex. 1995) (construing PIA predecessor statute and Tax Code to resolve conflicts between Tax Code confidentiality provisions and open-records provisions).

The University's response incorporated its summary-judgment motion to which it attached the cover sheet for the research-grant proposal to the National Science Foundation and a copy of the informed-consent document that was provided to the human research subjects. The study, as described in the proposal, is titled "Behavioral Insights into National Security Issues," and was designed to explain and predict individual actions related to terrorism and counterterrorism by using laboratory experiments with human subjects. The laboratory experiments were designed to test theories related to attack-and-defense games, cooperation among countries in the decision to pursue terrorist organizations, and the motivation for suicide attacks. The University argued that identifying the individuals who participated in a study that "necessarily captured feelings and behaviors of individuals that they may not otherwise share with the public and their participation could lead to negative inferences about why they were selected, chose to participate, or what their responses may have been." In addition, the University pointed out that the informed-consent documents provided to the individuals who participated in the study told them that their identities

8

would be kept confidential and would not be disclosed.[2]  For the reasons explained below, these two documents suffice to raise a fact issue about whether a reasonable person participating in the study would find disclosure of his identity highly offensive and embarrassing.

In his summary-judgment motion, the Attorney General asserted that compared to the information protected in *Industrial Foundation*, disclosure of participation in the study at issue is not highly intimate or embarrassing private information, and that "the University has not met its burden here."  On appeal, he asserts that once he demonstrated that the list of names was not confidential under *Industrial Foundation*, the burden shifted back to the University if it wanted to attempt to show that specific details related to this study mean that the identities of the participants should be protected because of their common-law right to privacy.  He further contends that although the University presented evidence about the study's subject matter, "it could not successfully show that the information met the requirements of the *Industrial Foundation* common-law privacy test." Although the Attorney General purported to file a traditional summary-judgment motion, the thrust of his argument is that once he conclusively negated the "highly intimate or embarrassing" element

---

[2]  In his letter ruling, the Attorney General asserted that a party's expectation that information would remain confidential has no bearing on whether it is confidential under the Act, citing *Industrial Foundation* and Open Records Decision No. 203.  We note that the court in *Industrial Foundation* specifically distinguished the situation in that case from the situation present in Open Records Decision No. 55A, which had been relied on by the party resisting disclosure, because in *Industrial Foundation* "no express contract of confidentiality was here made by the Board in order to induce claimants to provide the information sought" by the requestor.  *Industrial Found. of the S. v. Texas Indus. Accident Bd.*, 540 S.W.2d 668, 677 & n.15 (Tex. 1976).  While the parties in this appeal have not addressed the issue of whether the informed-consent form constitutes an "express contract of confidentiality," we note that in the context of common-law privacy, a party's expectation of privacy before choosing to participate in a study could have some bearing on whether a reasonable person of ordinary sensibilities would find disclosure of participation to be an embarrassing fact, depending on the resolution at trial of the factual questions discussed *infra*.

9

of the University's claim with his legal argument, as he asserts he did, the burden shifted to the University to establish that element as a matter of law, not merely to raise a fact issue in response.

We disagree. First, for the reasons explained below, we conclude that the Attorney General failed to conclusively negate the "highly intimate or embarrassing" element of the common-law right to privacy on the record before us. Second, even if he had negated that element as a matter of law, the University's burden in responding to the summary-judgment motion was only to raise a fact issue.

Initially, we note that the question of whether publication of a particular matter concerning a person's private life would be highly offensive to a reasonable person of ordinary sensibilities is by its nature a mixed question of fact and law.[3] The information considered by the court in *Industrial Foundation* was related to workers' compensation claims, which were primarily medical or psychiatric in nature. The court considered an affidavit submitted in response to a

---

[3] The Attorney General continues to urge on appeal that application of the PIA is a matter of statutory construction and that the questions at issue (i.e., whether the requested information is subject to the PIA and whether an exception to disclosure applies to the information) are purely questions of law. While the Texas Supreme Court decisions upon which he relies for these propositions involved matters of statutory construction and were appropriately resolved by summary judgment, they do not stand for the propositions that every PIA case can be resolved by summary judgment or that all PIA cases involve only pure questions of law. *See City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000) ("Because the parties do not dispute the relevant facts, this is a proper case for summary judgment"); *A & T Consultants, Inc. v. Sharp*, 904 S.W.2d 668, 674 (Tex. 1995) ("A & T's request does not raise factual issues about the nature of the information sought."); *see also Arlington Indep. Sch. Dist. v. Texas Att'y Gen.*, 37 S.W.3d 152, 162-63 (Tex. App.—Austin 2001, no pet.) (holding that school district failed to raise fact issue concerning scope of agency-memoranda exception with conclusory affidavits that had been properly stricken). Moreover, the question here is not one of statutory construction. The question is whether the common-law right to privacy applies to the requested information; if it does, then there is no dispute that the applicable exception is PIA Section 552.101 ("information considered to be confidential . . . by judicial decision").

summary-judgment motion that alleged that many of the claims filed concerned "matters of extreme privacy which, if released, would cause extreme embarrassment to the injured claimant" and provided specific examples of such claims. 540 S.W.2d at 683. The court cited as examples the following types of claims: a claim for injuries from sexual assault, a claim on behalf of illegitimate children for benefits following their father's death, a claim for pregnancy expenses resulting from failure of a contraceptive device, claims for psychiatric treatment of mental disorders following workplace injuries, claims for injuries to sexual organs, claims for injuries from an attempted suicide, and claims of disability caused by physical or mental abuse by co-workers. *Id.* The court determined that publication of "at least some of these claims are of such a nature that their publication would be highly offensive to a reasonable person" and remanded the case to the trial court for it to consider the individual files alleged to be private and for it to determine whether any of the information should be withheld from disclosure. *Id.* at 683, 685-86.

The court in *Industrial Foundation* did not limit the type of information that is highly intimate or embarrassing to the list of examples cited in that opinion, and the Attorney General's reliance on its holding did not conclusively negate that element of the University's claim. Even if we assume for the sake of argument, however, that the Attorney General's broad reliance on *Industrial Foundation* sufficed to conclusively negate the "highly intimate or embarrassing" element of the University's claim, the University's burden in response would not have been to conclusively establish that element of its claim, but only to raise a fact issue. *See Amedisys, Inc.*, 437 S.W.3d at 517 (when movant satisfied its initial summary-judgment burden, burden shifted to nonmovant "to produce evidence raising an issue of fact"). As the University urges in its brief, in this particular

11

case, there are unanswered fact-specific questions related to the research study, including whether there will be details in the research-study results that could be tied to the research subjects' identities if their names are released, whether a reasonable person would view disclosure of participation in the study embarrassing (which may be dependent on the results of the study), and the potential consequences of disclosure.[4] While it is correct that in a PIA case, the governmental body (here, the University) seeking to withhold information bears the burden *at trial* of demonstrating that the requested information is either not public information or falls within an exception from disclosure under the PIA, *see Abbott*, 310 S.W.3d at 673-74, on a traditional summary-judgment motion not involving a purely legal question, the movant's burden to conclusively negate an element of the nonmovant's claim remains the same as in any other case involving a traditional summary-judgment motion, *see Centeq Realty*, 899 S.W.2d at 197. Based on the limited record before us and the specific facts of this case, we conclude that the Attorney General did not establish as a matter of law that disclosure of the human research subjects' identities (and thus their participation in the study) is not highly intimate or embarrassing private information under the common-law privacy test.[5]

---

[4] Indeed, while Cameron's motive for requesting the information is not relevant to the determination of whether the PIA requires disclosure of the information, *see Industrial Foundation*, 540 S.W.2d at 674, Cameron states that she initiated her PIA request out of concern that she "may have been unwittingly drawn into the experimental labs," which she acknowledged may "collect information that can be intimate, embarrassing, with behaviors and ideas that can be objectionable, if published."

[5] Having reached this conclusion, we need not address the University's alternative argument seeking a remand to the trial court "with instructions to apply a more robust legal framework for addressing privacy concerns" than that provided by the *Industrial Foundation* test in order to address more modern concerns about privacy and the impact of technology on information disclosure, "taking into account all the recent pronouncements from the Texas Supreme Court that bear on this issue."

12

Therefore, we reverse the trial court's grant of summary judgment and remand the case to the trial court for further proceedings.

## CONCLUSION

Having concluded that the trial court erred by granting summary judgment, we reverse the trial court's order granting summary judgment and remand the case for further proceedings.

_____

Cindy Olson Bourland, Justice

Before Justices Puryear, Goodwin, and Bourland

Reversed and Remanded

Filed:   April 7, 2017

13